My name is Sherry Alex. I represent the petitioner Maria Gonzalez Castro. This is a case of persecution on account of political opinion in Mexico. There are three issues before the court. One is whether the petitioner established that she had a political opinion in Mexico, and if so, then the second issue is whether she was subjected to past persecution in Mexico or has a well-founded fear of persecution on account of her political opinion. The third issue is whether she has established a case under the United Nations Convention Against Torture. SCALIA Do you think the second issue is one that we can decide? GONZALEZ CASTRO Your Honor, I was looking at the I.J.'s, the immigration judge's decision this morning, and on page 90 of the administrative record, he does say that he doesn't give any analysis of the past persecution or well-founded fear issues. However, he does say that the Respondent has failed to make those cases and also said He says what? He said that she has failed to establish past persecution or well-founded fear on account of political opinion. He sort of ran the analysis together. Well, the sentence is, on the basis of the record before this Court, I do not conclude that Respondent has been the subject of past persecution or has a well-founded fear of persecution on account of any of the five statutory grounds for asylum. That's correct. Now, do you read the on account of any of the five statutory grounds for asylum? First, do you read it as modifying both that she has not been the subject of past persecution and that she does not have a well-founded fear of persecution? Your Honor, I think it's simply not clear. I think that it could be read either way, too. And additionally, excuse me, additionally, the immigration judge goes on to say that she has not established her case for withholding of removal. So it seems that he did. Well, she says that doesn't get you anywhere because she says he hasn't established a case for withholding because she didn't establish it for asylum and there's a higher standard for withholding. I mean, you're right that that sentence is not very clear. It's a typical sentence from BIA or IJ reports. Becoming more typical lately. Yeah. And it really is. Well, and in this case, it allows the judge to bit by bit decide the case. Well, no. He could decide it bit by bit more clearly if he would just say he hasn't, she hasn't established that she, the reason for her persecution, if any, was on account of political opinion. Correct. Then you'd know that he was deciding it on the basis of political opinion. Instead, they always come in with a sentence that covers everything in the statute and says he hasn't established what the statute requires him to establish, in effect, instead of specifying which ground. But that's an ambiguity that's almost inherent in their decisions. But would you, is that your argument, that he did decide all the issues because of what he said in that sentence? Essentially, Your Honor, yes. I am modifying the, what I said in my reply brief. All right. So that, I sort of took you directly to the second question, which is whether we are free to decide, assuming you prevail on the first, whether we're free to decide the entire asylum issue or whether the BIA has decided, only a question of whether it's on account of. Well, wouldn't we also have to remand in any event to, once we find past persecution, to allow the government to? To rebut, yes. That's correct. Was there, is there any contention here that the country conditions have changed? Your Honor, the country conditions changed slightly during the course of the proceedings before the IJ, because Vicente Fox, who was governor of Guanajuato State. But I mean, since the IJ decision. But no. Not appreciatively. Has the government introduced anything? That they haven't introduced anything. They introduced evidence that Governor Fox had become the President of Mexico, but. Did they introduce anything at the hearing that showed that from the time of the acts she complains of, that there had been a change? I don't mean the change in the President. A change in the conditions. They submitted one newspaper article, I think that had to do with a state official in Tijuana saying that his office was open to anybody who had a complaint against the police, which doesn't actually say much about the country as a whole. And in fact, in that article, it was noted that the people of Tijuana didn't know what to make of that, and were actually very suspicious of his motives. So it doesn't seem, and the human rights reports and evidence, you know, paint a picture of a country that really, you know, while trying to adopt rules and regulations and laws that will protect its citizens, really has a tremendous problem with impunity and the security forces. And really, even the most well-meaning parts of the Mexican government can't control these security forces. They basically do what they want. Before we get to your main point, that the DIA and the IJ were wrong about whether this was persecution on account of political opinion, do you really see any basis for a torture claim here? Your Honor, I do. I think that when you look at, as the regulations require you to do, when you look at the human rights situation in Mexico and you look at the MO of the security forces and how they behave toward people who bring human rights complaints, it is, first of all, the human rights, the U.N. Special Rapporteur on Torture when she visited Mexico stated that Mexican authorities do appease to torture. In fact, it's commonplace in criminal prosecutions to use confessions extracted from torture as the main evidence to convict people. So the system uses torture in a systematic way. Also, the reports and evidence that we have show that attorneys and other activists who've tried to bring human rights complaints against the State have been arbitrarily arrested, tortured. They've had confessions extracted from them for use in framing them for drug offenses, for firearms offenses, to discredit them, and to stop them from bringing their actions. Now, the IJA certainly discussed the torture claim in detail. So that's not something that requires a remand. You're saying that he is wrong and that we should you have established in this record a fact that she is entitled to relief under the torture convention. That's what we're saying. You have to look at what she was actually subjected to already. Under the torture convention, you can – torture can be a threat against your life. It can be an imminent threat against you or against one of your family members. She has suffered that. The only piece that's missing from actually having suffered torture per se under the definition already is that she was not in the custody of the government when it happened. You have a case that says that a mere threat of – The regulations state that, Your Honor. The regulations state that – Which regulations? Which cite the regulations? The regulations, 8 CFR 208.18, the definitions under the implementation of the Convention Against Torture, where they list what torture is. That would be subsection A1 through – 1 through 8. And specifically I'm looking at 4. It said that in order to constitute torture, mental pain and suffering, which is what she was subjected to, must be prolonged mental harm caused by or resulting from. And then the third – the third possibility down says the threat of imminent death, and the fourth is threat that another person will imminently be subjected to death, severe physical pain or suffering. So I'm not saying that she's actually already been tortured as it – as exists in the definition, but what I'm saying is that – You're saying there was – there's an imminent threat, or there was an imminent threat. There is an indication that things are moving in that direction. Well, indication that things are moving in a direction is hardly an imminent threat. Well, the – Indication is – The definition doesn't require an imminent threat. What they're saying is imminent threat of death is a form of torture. Yes. But when you're establishing eligibility for relief under the torture convention, you have to establish that it's more likely than not that she would be tortured, not that it's imminent that she would be tortured, but that it's a 51 percent chance. All right. Maybe you want to get on to your first point as to why the IJ is wrong in your view that she was – whatever happened to her Was on account of political opinion. Did not happen on the basis of political opinion. All right. Well, I think that that's one of the most interesting questions, and I think it's compelling. I mean, if you think broadly about what we consider to be political opinions, they're so much broader than what the government has suggested, that it's merely support for a political party or opposition to a political party and its position. A political opinion really has to do with your ideas about the exercise of the fundamental rights of citizens vis-à-vis the government and to the exercise and limits of governmental power. I mean, that's what we're really talking about. What can the government do to you? Can the government torture you? Can the government arrest you arbitrarily? Are those things wrong? Can the government destroy the environment? Can the government restrict what you do with your own body? There are so many other things that are political that are not necessarily tied into support or membership in a political party. That's a totally different thing. And I think the government has suggested that because she claimed to be apolitical in the sense of not supporting a political party, that therefore it's a factor she doesn't have a political opinion. But that's just not true. And all through her actions, she manifested a political opinion that the government has no right to torture its citizens. It has no right to ignore its own laws. It has no right to arbitrarily detain its citizens. And because the government is so involved in actually doing those things, coming out against that is fundamentally a political opinion. And, in fact, this, the Ninth Circuit has a case, Graba v. INS, which I cited in my reply brief, which states that the exposure of corruption in the government, if the corruption is fundamentally intertwined with the workings of the government, is per se a political act. It is a political opinion. And I think that the, this situation, not only was she exposing the malfeasance of the government of Mexico, but she was doing it in a very public way. She went, and she was doing it in what, even at the beginning, was a politically charged case, even in the traditional sense. Because her clients, and if you look at the news reports that are in evidence, the newspaper reports from Mexico, her clients during the time that they were being tortured were also accused of being priestas and priests, which is, which refers to, of course, the PRI, who was the, which was the opposition party in  The ruling party was the PAN. So already she's stepping into a case that's politically charged, which is what this court used as part of the basis of its decision in Reyes-Guerrero, which was the case of the Colombian prosecutor, who was involved in a politically charged matter, investigating an opposition political party. She's stepping into the same kind of thing that's going on here, where her clients, at least in part, are being targeted because they're being accused of being on the other side. Not only, not only did she bring the suit, too, it's important to, to remember that she had to push to even get the state to accept this suit, because it had to go to a public prosecutor's office and be accepted. As soon as she presented it, they said, oh, you're suing the state? We're not taking it. We're not touching that. She had to go to three different public ministries, and then after, after they all refused her, she had to go to the press, and she had to shame the government into following its own laws. So everybody knew that she was, not only was she bringing the suit, but she was making a stink about it. She was really pushing this. Something, something was up with her, you would think, and all the other attorneys in town said, what are you doing? This is crazy. You can't fight the state. So in the context of Mexico here, what we've got is a very politically charged situation, and one that exposes governmental corruption that is fundamentally intertwined with the workings of the government. Thank you. Thank you. Good morning, Your Honors. Patricia Smith representing John Ashcroft. The record evidence in this case does not compel reversal of the immigration judge's determination that Petitioner is not eligible for asylum or withholding of removal because she failed to establish either past persecution or well-founded fear of persecution on account of a protected ground under the Immigration and Nationality Act. Additionally, the record evidence does not compel reversal of the immigration judge's determination that Petitioner is not eligible for protection under the Convention Against Torture because she failed to establish that it is more likely than not that she will be tortured if she returned to Mexico. Addressing first the issues in the order the Court just addressed them with Petitioners' counsel, with respect to the issue of past persecution and well-founded fear, we do not believe the I.J. decided those issues. So that if the Court reverses the I.J. with respect to the on-account of issue, that would need to be remanded for the Board to decide that issue. Let me ask you this. What is it that would enable – I know the BIA and the Attorney General have been very interested in getting these cases decided quickly. They complained about long delays. It's been seven years or six years on an average that cases take. How do we get the I.J. to decide all the issues when he has a hearing instead of coming up with one finding, then saying, send it back. All I found was it's not on account of political opinion. Then the next question is, well, was there past persecution? And then we say, well, you're wrong on that. Then you send it back again to see whether the past persecution, which creates a well-founded fear and a presumption, whether that's been rebutted under country conditions. That's at least three times you can do it. There may be more, depending on how you subdivide these issues. How do we stop that practice and get you to decide the case so that it can be reviewed once and not go on for three years, six years, nine years? I suppose it would need to be legislatively done. I don't think there's anything that exists in the regulations right now that requires an immigration judge to determine every case on all the alternative grounds. I mean, any court, when they're looking at a case, they may or may not decide on all alternative grounds. And the IJs, the immigration judges do. Kennedy, is it the policy of the agency to do that? I don't think so, Your Honor. I mean, I know from the various cases that I read, sometimes the immigration judges do decide cases on alternative grounds, and sometimes they don't. Frequently, I think in a case such as this, where it's very clear to them that based on one issue, the alien is not eligible for asylum, they just leave it at that. But the problem in this case is that that precise ruling is ambiguous. And it may be that in this case, because it's ambiguous, that we should construe it in a way that's against the IJ, because he's the one who wrote it to make it ambiguous. I don't think it's ambiguous, Your Honor. I mean, the analysis of it. I think it's ambiguous because there's a or there, and then there's the second clause, and then it follows by reason of political opinion. So it's just not clear to me when he says past persecution, unaccounted past persecution, because he recites all the persecution. And then he says or, well-founded fear on the basis of a political ground. So, I mean, the way I read it, I see him having decided both issues. And at best, it's ambiguous. The analysis that proceeds that, Your Honor, deals with unaccounted. There's no analysis regarding past persecution or well-founded fear. It all relates to unaccounted, and that's his concluding sentence. You're always going to have unaccounted at the end of the sentence. And generally, for both past persecution and well-founded fear, you need to have the unaccounted established. For the Torch Convention, it's different. So that is the case. It would be very easy. You don't always have to have a sentence that's unclear. No. It's very easy to say, accordingly, he has not established that the basis for or the was one of the protected grounds. Or he hasn't established that it was on the basis of political opinion. Then, you know, they're deciding. I mean, it's just it's not difficult to do, but they don't do it. I don't understand why he'd recite all these facts that are relevant to past persecution but not be deciding that issue. He recites the whole thing. Well, the facts of the case frequently in the IJs go forward, what the whole claim is by the petitioner. But then in their analysis, when they're analyzing the law, they deal with the issues that they're dealing with. And he only specifically deals with on account of. There's no discussion of threats don't equal past persecution. I mean, there's no discussion of that in this brief, in his analysis. His analysis is focused on account of. And to conclude that a sentence by the IJ that puts together the past persecution and the well-founded fear and discusses on account of, somehow he has decided both issues, we don't think would stand up. Do you think there's any doubt that she suffered past persecution? I mean, it seems as though he decided, yes, there's persecution, but it's not on account of an enumerated grant. I don't think he decided there was persecution, Your Honor. I mean, in this case, all there were were threats for over a two-year period of time. So you don't so as a mayor of law, you don't think this is persecution, what she suffered? No, Your Honor. But I don't think that's here for the Court to decide again today. I mean, that wasn't decided by the lower court. So it can't be decided here. But, you know, all that's in the evidence is purported threats by an anonymous caller. That's all we have here. But, again, the immigration judge didn't analyze that. So under Ventura, that would need to go back and be remanded if the Court were to reverse the on-account action. If it's not persecution, in your view, you wouldn't see any reason to decide the country conditions issue. That's correct, Your Honor. We don't think there is. So that means we can expect it to be here three times. Well, I don't know how frequently that occurs, Your Honor, in terms of a case. Once it's remanded, whether all the issues are resolved and it doesn't, it does or does not come again, I don't know to what extent that happens. But, you know, in this specific case, we believe it's very clear the I.J. only decided the on-accounted issue. And, therefore, there was no reason to ever get to the presumption issue. Quickly discussing the torture claim before getting specifically to the on-accounted issue, we believe here there's no indication that the Petitioner is more likely than not to be subjected to torture if she returns to Mexico. She indicated that she received anonymous threats over a two-year period. Nothing ever happened to her. By her own testimony, the last call that she received was in February or March of 1999, and she left in May of 1999. There is no evidence that the anonymous caller would continue to have any interest in her more than five years later. What she asserted at the merits hearing was that she believes that she would be killed if she returned to Mexico because the only explanation she provided for that was that the former prosecutor, Camarena, she believes would now be in a higher position because he has ties with the former now President of the former Governor, now President of Mexico, Vincente Fox. That does not amount to compelling record evidence to suggest that she's more likely than not to be tortured. Petitioner cites the torture evidence in the record in terms of articles, but those relate to indicating that torture does sometimes occur with respect to individuals who they're trying to seek a confession from. There's no indication here there's any efforts to seek any kind of a confession from Petitioner in any way. Thus, we don't believe there's any compelling record evidence that would require a reversal of the immigration judge's determination with respect to the Convention Against Torture. Turning now to the main issue, the unaccounted issue, Petitioner here did not express any kind of a political opinion. In fact, at the hearing, she stated that she was apolitical. She also did not express a political motive for the suit she filed on behalf of her clients. She asserted that she suggested her clients file a complaint for abuse of authority and to seek damages for any harm they suffered when her clients came to her and indicated that they were threatened after they had been detained following the dismissal of the extortion case against them. She also stated that in her efforts to have the case proceed more quickly, she met with the then-governor, Vincente Fox, and she acknowledged that he was very pleasant  When asked during the merits hearing why she proceeded with the case after she purportedly received anonymous calls telling her to drop the case, and her clients also told her to drop the case, she alternated between saying her ethics caused her to continue with the case, noting that she couldn't dismiss the case without her clients' permission, to she wanted to see the law prevail. None of those statements indicate a political motive on her part. Moreover, there is no evidence in the record, as there should and need to be for her to prevail, that the alleged persecutors attributed a political opinion to her. Petitioner merely asserted that she received calls, anonymous calls, that she should cease her efforts with respect to the complaint filed on behalf of her clients. Petitioner did not testify to any statements or actions by the alleged persecutors, which would indicate that they were threatening her based on an actual or imputed political opinion, rather than because, as she indicated, they wanted her to drop the case. She has not identified any record evidence that would compel a reversal of the immigration judge's finding. She simply argues that her efforts to enforce the law demonstrates that she had a political opinion, and that general reports of human rights abuse in New Mexico demonstrate that the persecution she alleges is on account of her political opinion. She ignores the fact that by her own testimony, she filed the complaint on behalf of her clients to enforce the law, and furthered that the purported threats were from an anonymous caller who only indicated he wanted her to drop the case. Well, if you file a threat, file a suit to enforce the law, and the law is something that the government doesn't believe in, and the government is corrupt, or that's the position of your client, and you're trying to enforce the law against a corrupt administration, isn't that a political act based on a political view that the law should be enforced? This case is different than some of the cases that this Court has issued that somewhat relate to that. I mean, here it was a specific abuse that she alleged occurred to her clients. This was not a claim against the government in general, general corruption of the government. This was specific. This was my clients were arrested without warrant, and they were abused during that period of time. That's what her claim amounts to. Cases where this Court has found that it amounts to something more have differed. I mean, there have been cases where in Reyes-Guerrero, the alleged prosecutor was a member of the conservative political party, and he was charged to go against the liberal party. I mean, that was a clear case where it was one party going against the other party, and that's a case where the Court said it was all intertwined. In Grava, the Court didn't actually decide beyond a count of issue. They cited to Reyes-Guerrero in terms of talking about the whistleblower case, but the statement that they made was the salient question is whether the aliens actions were directed toward a governing institution or only against individuals whose corruption was aberrational. They didn't actually decide the issue. They were managing the board because of an issue dealing with the board and the legal analysis that they had utilized. But here we would argue, I mean, the case here was specific. It was against – it was respect to the abuse that her clients purportedly were subjected to by a couple of police officers. The articles that she submitted into the – into evidence discussed that the action was primarily against specific individuals. We don't have the complaint. That's not part of the record, so we can't see how the complaint is worded. But the articles that discuss it indicate that she was going against specific police people. And again, I mean, the important part here is what you've got to show under Elias Zacharias is the motive of the persecutors. Here, all that was said was drop the case. That's it. This isn't a case of circumstantial evidence. In Gafoor, where the Court looked at circumstantial evidence, what they claimed was circumstantial evidence was that when the Army picked up the alien at issue, they accused them of opposing the Army, and they made comments that the individual should go back to Indian. And based on that, the Court said that was circumstantial evidence that the alien was persecuted on account of political opinion and ethnicity. That's not what we have here. All that we have here is anonymous calls saying drop the case. The motivation was clear. They wanted the alien to drop the case. There's nothing more in the record. The alien – in the brief to this Court, the – there's some discussion of comments made to her clients that they were PRI traitors. Now, those were in the articles. There was nothing in her testimony or her declaration where she suggested that the clients of hers were being persecuted or tortured based on their political affiliation. It's an argument that's now made in the brief, but that wasn't made by the alien. That was never her claim. Her claim was they wanted me to drop my case. I was attempting to enforce the law. There's nothing about political – there's nothing about political persecution there. I mean, the cases where this Court has said there's political persecution have involved an alien specifically indicating they've got a political position and that they've got an indication where the alleged persecutor has stated a political opinion in terms of finding – has stated that they believe the alien has a political opinion. That's just not the case here. And on that basis, we don't believe that there's any record evidence, let alone compelling record evidence, which suggests there's a basis to overturn the immigration judge's determination that there was no past persecution or well-founded fear of persecution on account of a political opinion. Some would believe the Court should deny the petition for review because the petitioner has not set forth compelling record evidence to establish either that the immigration judge's determination that she failed to establish that any alleged persecution was on account of her political opinion or the immigration judge's determination that she failed to establish that it's more likely than not that she'll be tortured if she was returned to Mexico. Thank you. Going back to the issue of whether the – of whether well-founded fear or past persecution has been decided, if you look at the Ninth Circuit case of Gonzalez-Nera, where they tell us what you have to prove in order to prove that you've been persecuted on account of political opinion, which is what the judge found did not happen, you have to first prove that you've been a victim of persecution and then that you hold a political opinion, your political opinion is known, and your political opinion was the reason that you were persecuted. So actually in this case, and that's Gonzalez-Nera at 1296, they actually include past persecution as a prong, as something that you've got to prove to show persecution on account of political opinion. So if you're following that case, and I actually did my own bifurcation when I argued the case because it was just easier to organize, and I let that prong out when I cited Gonzalez-Nera. But if you go back into the actual case itself, that prong is all part of the political opinion analysis. So the way that the I.J. decided the case is actually in accord with the way that the court decided in that case, the analysis altogether. The I.J.'s, they should, before they get to on account of, they need to legally make a decision on the persecution or not? According to that case, which is one of the cases in the circuit that defines what the prong of political opinion is. But does that case say, mandate the order in which you have to decide the issues? It doesn't say so specifically, but it does number them, 1, 2, 3, 4. And number 1 is, they come up with a decision. But does it say you must decide them in the order in which they're numbered? No, it doesn't. Or can you go to issue 3 and decide that first and say, therefore, we don't have to decide 1 and 2? It doesn't say. I sometimes see that skip to the determinative issue. Right. But all I'm saying is that this is something that has been included as an all-in-one analysis. All right. Also, I want to correct what the government is telling you about the harm that was suffered by Ms. Gonzalez-Castro. What they're not including is the fact that her client, the one that stuck with the and left for dead on the street. And not only that, but all of his identification was taken out of his pockets with the sole exception of her business card, ensuring that she would be the one called to identify him. And she was called to identify him in intensive care. And after she returned from that visitation, she received a call saying, you saw what happened to Juan Carlos. You are next, and so are your children. And what this court has found in the cases of Coroblina and Gabala, which are cited in the brief, that menacing threats of death coupled with harm to those who are close to you, which is directed at you, constitutes past persecution. So there's a lot more going on than just these anonymous threats. And I don't think, although the colleagues didn't identify themselves, I don't think they're so anonymous, as the government would like to say. No one else but the security forces had any interest in this case. The government and the security forces were the only ones that would benefit from the case being dropped. So who else would be calling? And the I.J. at one point did suggest at the end of the last hearing that maybe these were crank callers, which is just completely, you know, it completely ignores the context of the case. So, all right. Also, it's not new speculation that Camarena was elevated to a higher position when Fox took office. We have a statement in the record from an attorney that helped my client gather evidence, and he says that Camarena is now the assistant attorney general of Mexico, and that's found in the record at 405. Well, but Sam, this case goes back. If it goes back, there'll be changed country conditions, particularly if it comes back two or three times. Sooner or later, Camarena will be out of the government. Somebody else will be in, and then you'll have changed conditions. Well, that's a perennial problem with these asylum cases. When they come up, people go. The idea of asylum was originally that when you arrived here, you were, you know, But if we just let these cases drag out for 10 years, then the question becomes, what's the country like 10 years later? Yes. Well, and with regard to country conditions, I mean, there are two ways that it could go back for it to look at country conditions. If the Court found past persecution, then it would need to be remanded so that the government could bring its evidence, and the burden would be on the government. Or you could simply decide that that wasn't touched by the IJ, and then it would go back, and that would be part of the analysis, but the burden would be on the applicant, on the alien. So there are two different ways that it goes back. I don't have any illusions that at some point we're going to have to deal with current conditions in Mexico, but I don't think that that's really what's before the Court right now. Does the fact that both Camarena and Fox have been promoted out of their former government positions help or hurt your client's case? I think it potentially helps because now they have more, they have broader powers. I mean, now, before they were just, you know, big fish in a small pond in the state of Guanajuato. Now they are the big fish in the whole country of Mexico. If they wanted to, they have a lot more power to harm her than they did. But additionally, an interesting point that I wanted to bring out, too, there's some discussion, I think, in the asylum profile that's put out by our government saying, well, consider whether people can relocate in Mexico. A problem in a state might not be a problem all over the country. But it's important to remember that the statute, 208.13, when they talk about internal relocation, they say that you do not have to go there. You do not have to make that determination on internal relocation if the persecutor is the State, if the persecutor is the government. And they don't differentiate between State and Federal. It's just if it's government persecution, the alien does not have to prove that she could be safe in some discrete part of the country. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted. The court will stand in recess for the day.
judges: Reinhardt, Hall, Wardlaw